## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RETINA & VITREOUS OF LOUISIANA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-158-JWD-SDJ** |
| **ROBERT W. H. MASON, M.D.** | |

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Certain Counterclaims Pursuant to Federal Rule 12* ("*Motion to Dismiss*") (Doc. 19) filed by Counter-Defendant Retina & Vitreous of Louisiana, Inc. ("RVOL"). Counter-Plaintiff Robert W. H. Mason, M.D. ("Dr. Mason") opposes the motion. (Doc. 26.) RVOL has filed a reply. (Doc. 28.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, RVOL's *Motion to Dismiss* is granted in part and denied in part.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

The following factual allegations are primarily taken from Dr. Mason's *Answer and Counterclaim* ("*Counterclaim*") (Doc. 16). The well-pled allegations are assumed to be true for the purposes of this motion. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (citation omitted).

Dr. Robert W. H. Mason is a retina specialist who was hired by RVOL, a vitreoretinal surgery and ophthalmology medical practice located in Baton Rouge, Louisiana. (*First Amended Complaint & Request for Jury*, Doc. 10 at 2–3.) Dr. Mason had begun speaking to RVOL about

joining the practice around June 2016, and he was hired in early 2017. (Doc. 16 at 9–10.) In October 2019, Dr. Mason was made a shareholder pursuant to agreements signed by the parties, including an Employment Agreement, Shareholder Agreement, and Stock Issuance Agreement. (*Id.* at 10.) Dr. Mason claims that during the course of his involvement with RVOL, RVOL and its principal owner Dr. John Couvillion breached the agreements that were made. (*Id.*) Dr. Mason claims that these agreements were breached in at least twelve different ways. (*Id.* at 11–23.)

  **(1) *Pre-existing debt:*** RVOL had a practice of incurring debt for an injectable drug, which was paid for by insurance companies, but was not paid off until the last minute. (*Id.* at 12.) The COVID-19 restrictions placed on RVOL resulted in a decreased number of procedures, leaving RVOL in debt to the drug vendor. (*Id.*) RVOL took out a line of credit to pay off this debt, which Dr. Mason claims was incurred prior to him becoming a shareholder. (*Id.* at 12–13.) Dr. Mason cites to Section 8.1 of RVOL's Bylaws, which says that he would not be responsible for debt that RVOL had incurred before he became a shareholder.[1] (*Id.* at 13.) RVOL did make a demand that Dr. Mason pay those loans. (*Id.*) Dr. Mason says that this issue was not reflected in the financial statements he was given access to before he became a shareholder, so this issue was not known until after he became a shareholder. (*Id.*)

---

[1] This provision specifically states,

>   [T]he Corporation shall specifically indemnify a Class C Shareholder against, and the Class C Shareholder shall have no liability for, any action or inaction of a shareholder, director, officer, or employee . . . by, for, or on behalf of the Corporation relating to the books and records created and maintained by the Corporation pursuant to Article IX herein prior to the date of issuance of the Class C Shares.

(Doc. 16 at 13.)

*(2) Salary deferral not paid back:* Dr. Mason deferred 50% of his salary between April 23, 2020, and July 3, 2020, pursuant to an oral agreement, in order to pay back the debt to the drug vendors. (*Id.* at 13–14.) RVOL has not paid those deferred amounts. (*Id.* at 14.)

*(3) Failure to pay cash rebates:* Dr. Mason did not receive rebates from the drugs he ordered for the practice, despite a purported agreement with Dr. Couvillion that allowed Dr. Mason to receive rebates in exchange for the risk of spoiled drug units or lack of reimbursement. (*Id.* at 14–15.)

*(4) Unpaid salary:* RVOL did not increase Dr. Mason's base pay from $600,000 to $900,000 once he became a Class B Shareholder in November 2021. (*Id.* at 16.) Dr. Mason claims that this was in breach of the Employment Agreement.[2] (*Id.*) The Employment Agreement was attached to RVOL's *Opposition* as Exhibit B, (Doc. 19-3).

*(5) Resignation payout:* Due to Dr. Couvillion's behavior, Dr. Mason decided to seek employment elsewhere, eventually choosing to start a practice in Tennessee. (Doc. 16 at 17.) Dr. Mason notified RVOL in February 2022 that he would be leaving. (*Id.*) Dr. Mason offered to stay anywhere between six months and two years to ease the transition, but Dr. Couvillion said that six months would be enough time to train Dr. Mason's replacement. (*Id.*) Dr. Couvillion stopped communicating with Dr. Mason on February 25, 2022, which affected the shared patients between the two, prompting Dr. Mason to leave after six months, due to ethical issues. (*Id.* at 18.) Dr. Mason

---

[2] The relevant portion of the Employment Agreement provides,

> A. Base Salary: Physician shall be paid a base salary of $600,000 per year. All base salary payments to Physician shall be made in accordance with the Practice's regular payroll practices. Once the Physician attains the status of Class B shareholder . . . the Base Salary of the Physician shall be adjusted to the same level as the Practice's Class A Shareholder . . .

(Doc. 19-3 at 19.)

cites Section 2.8.1(a) of the Shareholder's Agreement, saying that he should be entitled to the payment that he would have gotten if he had stayed the full two years after notice was given.[3] (*Id.*)

*(6) Loss of income due to reduction in referrals after notice:*  Due to Dr. Mason's choice to leave RVOL and in breach of the terms that the parties had agreed to, the number of referrals that were given to him drastically decreased, resulting in lost revenue. (*Id.* at 18–19.)

*(7) Reimbursement of unusual expenses:* Dr. Mason claims that after he gave notice that he would be leaving RVOL, RVOL began making payments to "consultants" and "experts" who Dr. Mason believes were used to decrease the amounts owed to him. (*Id.* at 19.)

*(8) Unpaid accounts receivable:* During negotiations of the agreements that RVOL and Dr. Mason entered into, Dr. Mason requested that a provision—which would require him to forfeit his share of accounts receivable once he was no longer a shareholder—be removed from the contracts. (*Id.* at 20.) He was successful, and those portions of the agreements were omitted. (*Id.*) Despite this, RVOL did not pay Dr. Mason his portion of accounts receivable when he left RVOL. (*Id.*)

*(9) Reimbursement of unpaid expenses:* Dr. Mason and Dr. Couvillion both had American Express cards that were for business expenses for RVOL. (*Id.* at 21.) RVOL did not reimburse the charges on Dr. Mason's business card, although the expenses were related to RVOL. (*Id.*) Dr.

---

[3] Section 2.81(a) of the Shareholder's Agreement provides in relevant part,

> [I]f the Class B Shareholder is terminating his employment agreement with the Corporation due to an uncured event of default by the Corporation thereunder, the resigning Class B Shareholder shall be entitled to payment of his proportionate share of the then fair market value of all hard assets and the average of his Net Profits . . . over the three (3) years that precede the effective date of resignation or withdrawal, payable over a four (4) year period.

(Doc. 19-4 at 5.)

Mason argues that he is entitled to reimbursement pursuant to the terms and conditions of his relationship with RVOL. (*Id.*)

**(10) Reimbursement of share of personal expenses of Dr. Couvillion:** The parties had agreed that any legal, advertising, or accounting fees that related to RVOL business would be paid through the general cost center, which the parties shared. (*Id.* at 22.) Dr. Couvillion sent some of his personal expenses, including legal expenses relating to issues with Dr. Mason, to the general cost center, causing Dr. Mason to pay for costs that were personal to Dr. Couvillion. (*Id.*)

**(11) Failure to pay expenses from personal credit card:** In addition to his business American Express card, Dr. Mason had a personal American Express card that was linked to the business card. (*Id.* at 22–23.) Using his personal card, Dr. Mason paid for a family vacation using American Express points, but the vacation was cancelled due to COVID-19. (*Id.* at 23.) The points were refunded to the business card, causing Dr. Mason's personal funds to be used to pay business expenses. (*Id.*) RVOL has not paid Dr. Mason for the refunded points that were used. (*Id.*)

**(12) Failure to make equal distributions:** Section 4.3.2 of the Shareholders' Agreement allowed a Class B shareholder to receive the same amount of distributions as Dr. Couvillion, but Dr. Mason was not given the equal amount.[4] (*Id.* at 23–24.)

**(13) Other amounts owed:** Finally, Dr. Mason says that a forensic examination of RVOL and Dr. Couvillion's financial records "may reveal additional amounts owed to Dr. Mason" and requests that his right to bring a claim for those amounts be reserved. (*Id.* at 24.)

In addition to his breach of contract claims, Dr. Mason claims that RVOL fraudulently misrepresented its financial situation during their negotiations. (*Id.* at 24–25.) Finally, Dr. Mason

---

[4] This provision of the Shareholders' Agreement specifically provides, "All other distributions made by the Corporation, other than those distributions made under 4.3.1, shall be distributed *pro rata* to all Shareholders . . . ." (Doc. 19-4 at 8.)

claims that RVOL violated the Louisiana Unfair Trade Practices Act ("LUTPA") for the following actions described in the breach of contract claims (1) pre-existing debt, (2) salary deferral not paid back, (3) failure to pay cash rebates, (6) loss of income due to reduction in referrals after notice, (8) unpaid accounts receivable, (9) reimbursement of unpaid expenses, and (12) failure to make equal distributions. (*Id.* at 25–26.)

### B. Procedural Background

RVOL filed its initial petition in the 19th Judicial District Court for the Parish of East Baton Rouge on January 27, 2023. (Doc. 2 at 1.) Dr. Mason filed a *Notice of Removal* (Doc. 2) on March 3, 2023, alleging diversity jurisdiction. (*Id.*) Dr. Mason filed a *Partial Motion to Dismiss* on March 29, 2023. (Doc. 8.) RVOL subsequently amended its petition, filing the *First Amended Complaint and Request for Jury*. (Doc. 10.) Dr. Mason filed his *Answer and Counterclaim* on May 8, 2023. (Doc. 16.) His *Counterclaim* asserts the specific breach of contract claims described above, a fraud claim related to RVOL's representation that it was relatively debt free, and a claim under LUTPA. (Doc. 16 at 11, 24–27.)

## II.    RELEVANT STANDARDS

### A.  Rule 12(b)(6) Standard

While the 12(b)(6) standard is typically used to challenge a complaint, it may also be used for a counterclaim. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363 (3d ed. 2023). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge*, 624 F.3d at 210  (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)).  "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which

judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### B. Rule 9(b) Standard

"Generally, a plaintiff's complaint will survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the complaint plausibly states a claim for relief, assuming its factual allegations are true." *Turner v. Ascendium Educ. Grp.*, No. 20-660, 2021 WL 5510232, at *6 (M.D. La. Nov. 24, 2021) (deGravelles, J.) (quoting *Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2018 WL 3748399, at *5 (M.D. La. Aug. 7, 2018) (deGravelles, J.)) (citing *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 678)). "However, when the complaint involves a fraud allegation, [Rule] 9(b) requires a higher pleading standard." *Id.* "Specifically, this pleading standard requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Id.* (citing Fed. R. Civ. P. 9(b)).

"Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 625 (5th Cir. 2015) (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625

F.3d 262, 266 (5th Cir. 2010)); *see also United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) ("The time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby must be stated . . . in order to satisfy Rule 9(b)." (internal quotation marks and citation omitted)).

## III.    DISCUSSION

### A.  Introduction

In sum, the Court will grant RVOL's *Motion to Dismiss* in part and deny in part. Most of Dr. Mason's breach of contract claims are pled to be related to a contract with RVOL, and, for reasons given below, they will not be dismissed. Of the three that do not relate to a contract provision, one fails to state a claim and one is prescribed, so these claims will be dismissed. One claim will be classified as a tort but will not be dismissed. Dr. Mason's fraud claim is grounded in contract, so it is not prescribed. The fraud claim, however, is not pled in sufficient detail to state a claim, so it will be dismissed without prejudice. Finally, Dr. Mason's *Counterclaim* does not plead sufficient facts to give rise to a claim under LUTPA as the acts complained of have not been pled to be immoral, deceitful, or substantially injurious.

This case is before the Court pursuant to diversity jurisdiction. (Doc. 10 at 2.) Thus, the Court must look to state substantive law. The contract and the relationship between the parties were confined to Louisiana, so Louisiana law will apply. "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcon. Gas v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can what the highest court of the state would decide.'" *Id.* (quoting *Transcon. Gas*, 953 F.2d at 988).

Thus, "our task is to determine as best we can how the Louisiana Supreme Court would decide it." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (cleaned up).

### B. Breach of Contract

#### 1. Parties' Arguments

##### a. RVOL's *Motion to Dismiss* (Doc. 19)

RVOL's main argument against Dr. Mason's breach of contract claims in his *Counterclaim* is that of the thirteen breach of contract claims, only four cite to specific contract provisions. (Doc. 19-5 at 19.) The four that RVOL is not moving to dismiss are: (1) pre-existing debt, (4) unpaid salary, (5) resignation payout, and (12) failure to make equal distributions. (*Id.* at 19–20.) RVOL argues that the remaining nine claims should be dismissed for failure to state a claim, as no specific contract provision is cited. (*Id.*)

In response to Dr. Mason alleging that there were oral agreements that modified some of the contracts between the parties, RVOL says that the Stock Issuance Agreement and the Employment Agreement included "entire understanding" clauses that required the agreements to be modified in writing. (*Id.* at 21.) The Shareholders' Agreement had a similar provision, requiring the "unanimous vote of the Shareholders' Voting Interest" in order to change the contract. (*Id.*) RVOL argues that because these provisions were in place, any modification by an alleged oral contract is invalid. (*Id.*)

In the alternative to dismissing the nine claims for failure to state a claim, RVOL asks that the claims be treated as tort claims, since no specific contract provision was cited. (*Id.* at 21–22 (citing *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009)).) RVOL says that since torts are subject to a one-year prescription period, four of the claims that are being challenged would be prescribed. (*Id.*) RVOL argues that claim 2 (salary deferral not paid back) would be

prescribed because it addresses deferred salary from April of 2020 to July of 2020. (*Id.* at 22). Claim 3 (failure to pay cash rebates) is also prescribed because it began in November 2021, when Dr. Mason became a Class B shareholder. (*Id.*) Claim 11 (failure to pay expenses from personal credit card) is prescribed because it arose during 2020. (*Id.*) Finally, claim 13 (other amounts owed) requests relief for "undisclosed and unknown monies from any timeframe." (*Id.*)

b. Dr. Mason's *Opposition* (Doc. 26)

Dr. Mason responds to RVOL's *Motion* by saying that the oral contract modifications that he asserted in his *Counterclaim* were valid under Louisiana law. (Doc. 26 at 2–3.) He cites to *Monroe v. Physicians Behav. Hosp., LLC*, for the proposition that a contract may be modified by an oral agreement, even if there are provisions specifying that it can only be modified in writing, as long as the underlying contract is not required to be in writing. (*Id.* at 3–4 (quoting *Monroe v. Physicians Behav. Hosp., LLC*, 49,248 (La. App. 2 Cir. 2014), 147 So. 3d 787, 795–96).) Dr. Mason maintains that the contract that he entered into with RVOL was not required to be in writing, so an oral modification was proper. (*Id.* at 4.) He argues that parol evidence may be admitted to prove the subsequent agreements. (*Id.* at 4–5 (citing *River Oaks, Inc. v. Blue Cross of La./La. Health Service & Indem. Co.*, 595 So.2d 785, 787 (La. App. 5 Cir. 1992); *Water Craft Mgmt., LLC v. Mercury Marine*, 361 F. Supp. 2d 518, 552 (M.D. La. 2004)).)

Dr. Mason claims that several of his allegations of breach of contract do arise from specific contractual provisions. (*Id.* at 5.) For claims 2 (salary deferral not paid back), 8 (unpaid accounts receivable), 9 (reimbursement of unpaid expenses), 10 (reimbursement of share of personal expenses of Dr. Couvillion), and 11 (failure to pay expenses from personal credit card), Dr. Mason cites to contract provisions from the three agreements that he entered into with RVOL. (*Id.* at 6–7, 9–15.) None of these contractual provisions were cited in the *Counterclaim* in reference to these

11

counts. For claims 3 (failure to pay cash rebates), 6 (loss of income due to reduction in referrals after notice), and 7 (reimbursement of unusual expenses), Dr. Mason alleges (for the first time in relation to these claims) he and RVOL had entered into oral agreements that were later breached by RVOL. (*Id.* at 7–9.)

c.  RVOL's *Reply* (Doc. 28)

RVOL argues that Dr. Mason should not be able to use the oral agreements as modifications to existing contracts because parol evidence is only admissible to determine the intent of the parties when they disagree on the interpretation of an ambiguous contract provision. (Doc. 28 at 5–6.) RVOL asserts that since Dr. Mason did not identify ambiguous provisions, he cannot use parol evidence to show his oral agreement. (*Id.* at 6–7.)

RVOL also argues that the alleged oral agreements were formed prior to or contemporaneously with the written contract. (*Id.* at 7.) RVOL addresses Dr. Mason's case law about oral modifications, saying that it is inapplicable, as it applies to modifications subsequent to a written agreement. (*Id.*) It says that Louisiana courts do not allow modifications "through antecedent or contemporaneous oral agreements when the written agreements include 'integration,' 'merger,' or 'entire understanding' clauses." (*Id.* (citing *Mott v. Phillips*, 372 So. 2d 223, 227 (La. App. 3 Cir. 1979).) RVOL asserts that because Dr. Mason alleged that some of the oral agreements were part of contract negotiations, the "entire understanding" clauses of the agreements negate any part of the oral agreements that are not reflected in the written agreements. (*Id.* at 7–8.)

### 2.  *Law and Analysis*

#### a.  <u>Lack of Specific Contract Provision</u>

The Court will first address whether Dr. Mason sufficiently pled breaches of contract in his *Counterclaim*, and if not, determine whether the claims will be treated as tort or contract claims. Under Louisiana law, "a party asserting a breach of contract must prove a breach of a specific contractual provision." *Grand Isle Shipyards, Inc. v. Black Elk Energy Offshore Operations, LLC*, No. 15-129 C/W 15-153, 15-154, 15-905, 19-11825, 19-11826, 19-11827, 2021 WL 673449, *3 (E.D. La. Feb. 22, 2021) (Vitter, J.). "Even when a contract exists, unless a *specific* contract provision is breached, Louisiana treats the action as tort." *Richard*, 559 F.3d at 345 (citing *Trinity Universal Ins. Co. v. Horton*, 33,157 (La. App. 2 Cir. 4/5/00), 756 So.2d 637, 638).

Here, while RVOL argues that the specific provision that has been breached must be cited, the *Counterclaim* does not need to be in such detail. The Fifth Circuit held in *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, that "[w]hile litigants should, when possible, identify specific contractual provisions alleged to have been breached, [Federal Rule of Civil Procedure] 8 does not require that level of granularity." 7 F.4th 301, 309 (5th Cir. 2021) (citation omitted). The pleading only needs to allege facts upon which relief may be granted; it does not need to correctly categorize the legal theory beneath the claim. *Id.* (quoting *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013)).

Of the nine claims that RVOL moved to dismiss, three failed to plead sufficient facts upon which breach of contract relief may be granted. Claim 7 (reimbursement of unusual expenses) relates to expenses that were charged to RVOL that may not have been legitimate. (Doc. 16 at 19.) There is no mention of an agreement between Dr. Mason and RVOL concerning these payments,

and any relief would be through tort. As in *Richard*, the Court will treat this claim as one in tort. RVOL did not challenge this claim as prescribed, so the *Motion to Dismiss* Claim 7 is denied.

Claim 11 (failure to pay expenses from personal credit card) relates to credit card points that were mistakenly applied to the business American Express card instead of Dr. Mason's personal credit card. (*Id.* at 22–23.) This transfer of money and lack of repayment does not stem from a breach of a contract between RVOL and Dr. Mason. Dr. Mason does not refer to a contract between the two that would have required repayment. Since no contract provision is alleged to have been breached, the Court will treat this claim as an alleged tort. RVOL did argue that this claim is prescribed, as the refund of points to the business credit card happened in 2020. (Doc. 19-5 at 22.) Dr. Mason did not argue in his *Opposition* that this claim was not prescribed. "Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." *JMCB, LLC ex rel.*, *v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (citation omitted). Moreover, on the merits, Claim 11 appears prescribed on the face of the counterclaim, which was filed May 8, 2023. Thus, the Court finds that Claim 11 has prescribed and will be dismissed with prejudice.

Claim 13 (other amounts owed) does not relate to any specific action or contractual provision. It simply reserves the right to assert any claim for amounts he may be owed that are discovered during discovery. (Doc. 16 at 24.) The Court finds that this reservation is too broad to sufficiently state a claim under the 12(b)(6) standard. This provision, however, is not necessary to protect Dr. Mason's right to bring a claim based on new information learned during discovery. Leave to amend is generally given when facts giving rise to a claim are unearthed during discovery, and "[i]t would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been

completed . . ." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1488 (3d ed. 2023). Thus, the claim will be dismissed without prejudice to the right to amend the *Counterclaim* after discovery, should the basis for new allegations arise. Leave to amend will not be automatically granted, and the Court reserves the right to deny leave if the motion is untimely, as "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Id.*

RVOL also argues that any oral modification of its contracts with Dr. Mason should not be considered, as the Stock Issuance Agreement, Employment Agreement, Shareholders' Agreement, and the Bylaws include entire understanding clauses, requiring any modifications to be in writing. (Doc. 19-5 at 21.) This argument fails. As this Court held in *Urda v. Valmont Industries Inc.*,

> First, a written contract can be orally modified at any time, regardless of whether the written contract provides that it can only be amended in writing. *Schindler Elevator Corp. v. Long Prop. Holdings, LLC*, 50,199 (La. App. 2 Cir. 11/18/15), 182 So. 3d 233, 241 ("[A] contract that is not required by law to be in writing may be modified by a subsequent oral agreement, and parol evidence is admissible to prove the modification. Even contracts that contain a provision specifying that it may only be modified in writing may be subsequently modified by oral agreement."); *Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, 500 ("A written construction contract may be modified by oral agreement and by the conduct of the parties, even when the contract provides that change orders must be in writing."); *Monroe v. Physicians Behav. Hosp., LLC*, 49, 248 (La. App. 2 Cir. 8/13/14), 147 So. 3d 787, 796 ("Even underlying contracts which contain provisions specifying that the contract may only be modified in writing may be subsequently modified by oral agreement.").

561 F. Supp. 3d 640, 651 (M.D. La. 2021).

Thus, even though the contracts between RVOL and Dr. Mason contained clauses that limited modifications to those in writing, the oral modifications that Dr. Mason alleges were made may support a claim upon which relief can be granted.

15

Although RVOL argues that the oral modifications were alleged to have been made before the contracts were finalized, this is not reflected in the *Counterclaim*. Of the seven breach of contract claims remaining that RVOL moved to dismiss, only two are alleged to have been oral contracts. Claims 2 (salary deferral not paid back) and 3 (failure to pay cash rebates)), relate to oral agreements between Dr. Mason and RVOL after the execution of the written contracts. The entire understanding clauses in the contracts between the parties would not preclude subsequent modifications to the contracts, as entire understanding clauses integrate all *previous* agreements. *See King, M.D. v. Univ. Healthcare Sys., L.C.*, No. 08-1060, 2009 WL 2222698 (E.D. La. July 24, 2009) (Wilkinson, M.J.) ("Thus, in both [*Omnitech Int'l Inc. v. Clorox Co.*, 11 F.3d 1316 (5th Cir. 1994)] and [*Water Craft Mgmt., LLC v. Mercury Marine*, 361 F. Supp. 2d 518 (M.D. La. 2004),] the courts held that, on the particular facts of those cases, the integration clause should be enforced as to evidence concerning the parties['] discussions prior to signing the written agreements" (emphasis removed)). The Court finds that the oral agreements alleged may be considered in determining whether the *Counterclaim* states a claim for relief.

The remaining claims, (2) salary deferral not paid back, (3) failure to pay cash rebates, (6) loss of income due to reduction in referrals after notice, (8) unpaid accounts receivable, (9) reimbursement of unpaid expenses, and (10) reimbursement of share of personal expenses of Dr. Couvillion, all allege at least a connection to an agreement between Dr. Mason and RVOL. Because the standard under Rule 8 does not, as RVOL has argued, require a pleading to cite to the specific contract provision, the lack of citation to a contract provision does not require the dismissal of Dr. Mason's claims. The facts that are alleged in each claim are related to contracts between Dr. Mason and RVOL and could give rise to breach of contract claims. Reading the *Counterclaim* in

16

a light most favorable to the counterclaimant, Dr. Mason has stated a claim for breach of contract as to these claims. Thus, with respect to these claims, the *Motion to Dismiss* will be denied.

### C. Fraud

#### 1. Parties' Arguments

##### a. RVOL's *Motion to Dismiss* (Doc. 19-5)

RVOL argues that Dr. Mason's fraud claim is one based on fraudulent misrepresentation, which is a tort in Louisiana. (Doc. 19-5 at 2.) RVOL asserts that although there was a contract between the parties, the circumstances that were pled by Dr. Mason indicate that the fraud claim is based in tort law, not contract law. (*Id.* at 3–4.) RVOL cites the *Counterclaim*, where it says, "[a]s a result of RVOL's false representations . . ." (*Id.* at 4 (citing Doc. 16 at 25).) This indicates that the "fraud claim is based exclusively on an alleged failure to 'disclose' and ill-defined 'false representations.'" (*Id.*)

RVOL also points to the type of relief sought by Dr. Mason, saying that the relief of wages, damages, expenses, and amounts are tort damages. RVOL cites *Clark v. Constellation Brands, Inc.*, saying in that case, the plaintiff pled that they had entered into a severance agreement because of fraud, but the Fifth Circuit applied tort law because the petition and damages indicated that the claim was one grounded in tort. (*Id.* at 4–5 (citing *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 22 (5th Cir. 2009)).)

Because RVOL contends that the fraud claim is a tort, it also claims that the one-year prescription period for torts has run. (*Id.* at 5.) It says that since the fraudulent misrepresentation occurred before Dr. Mason entered into any agreements with RVOL, the misrepresentation would have had to have happened on or before October 1, 2019. (*Id.*) Since Dr. Mason did not file his *Counterclaim* until May 8, 2023, the one-year prescriptive period ran before Dr. Mason filed his

claim. (*Id.*) RVOL argues that even if Dr. Mason was not aware of RVOL's debt until after he became a shareholder, the *Counterclaim* alleges that he was made aware of the issue in early 2020, as evidenced by the fact that he agreed to defer part of his salary to pay off the debt. (*Id.* at 5–6.)

Even if the fraud claim is not prescribed, RVOL argues that Dr. Mason's fraud claim does not meet the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). (*Id.* at 6.) RVOL contends that the fraudulent misrepresentation allegations set forth in the *Counterclaim* do not allege "'the who, what, when, where, why, and how' of the alleged fraud . . ." (*Id.* at 7.) If there is a fraud by omission claim, RVOL asserts that Dr. Mason has not sufficiently pled enough facts. (*Id.* at 7–8.)

RVOL also contends that it had no duty to disclose facts to Dr. Mason, as there is no general duty to disclose in Louisiana, absent a fiduciary relationship. (*Id.* at 8.) RVOL says it did not have fiduciary duties to Dr. Mason, as Dr. Mason has denied owing a fiduciary duty to RVOL, is a sophisticated party, and had equal bargaining power in the agreements between the two. (*Id.*) RVOL also points to the provisions in the agreements that acknowledge Dr. Mason had access to RVOL's financial records and signed acknowledgements that the information in the agreements reflected all the information that he was given. (*Id.*)

Finally, RVOL asks the Court to consider Dr. Mason's representations and warranties in the Stock Issuance Agreement, indicating that he was aware of RVOL's financial situation. (*Id.* at 8–12.) RVOL contends that Dr. Mason knew about RVOL's routine billing cycle and had the information before he entered into the agreement to become a shareholder. (*Id.* at 12.)

### b. Dr. Mason's *Opposition* (Doc. 26)

Dr. Mason argues that he can allege both contract and tort remedies, and the availability of one does not preclude the other. (Doc. 26 at 15–16 (citing *TMA Leasing, Inc. v. Vacuum Truck*

18

*Sales & Service, LLC*, No. 15-708, 2016 WL 3351011, at *2–3 (M.D. La. 2016) (Dick, J.)).) Dr.

Mason claims that the misrepresentations pled in the *Counterclaim* were "misrepresentations made

in the contract between the parties." (*Id.* at 17.)

Dr. Mason points to Section 4.4 of the Stock Issuance Agreement, which says that RVOL

had a revolving working capital with the bank. (*Id.* at 18.) Dr. Mason says that through this

provision, "RVOL breached a special obligation that it contractually assumed and thereafter owed

to Dr. Mason exclusively – not a general duty owed to all persons." (*Id.*) This makes Dr. Mason's

fraud claim contractual, subject to a ten-year prescriptive period for contractual fraud. (*Id.*)

In response to RVOL's argument that the types of damages that he is seeking indicate that

the claim is tort-based, Dr. Mason cites to Louisiana law that says that a party can seek damages

without having to seek the recission of the contract. (*Id.* at 18–19.)

Finally, Dr. Mason asserts that he did plead the who, what, when, where, and how of the

fraud, and is not in possession of information about the why. (*Id.* at 20.) Dr. Mason looks to case

law to say that fraud by omission cases are difficult to plead, so a more relaxed standard applies.

(*Id.*) He says that he has met this relaxed standard by "identifying the type of facts omitted . . . the

place where the omissions should have appeared . . . and the way in which the omitted facts made

the representations material." (*Id.* at 20–21.)

c.  RVOL's *Reply* (Doc. 28)

RVOL argues that Dr. Mason attempts to connect his tort-based fraudulent

misrepresentation claim to the Stock Issuance agreement, even though Dr. Mason did not cite this

provision in his *Counterclaim*. (Doc. 28 at 8.) It says that Section 4.4 of the Stock Issuance

agreement does not misrepresent RVOL's financial situation. (*Id.*) RVOL also asserts that Dr.

Mason did not address the representations that he made in the Stock Issuance Agreement, where

he agreed that he had access to the information about RVOL's financial circumstances. (*Id.*) RVOL also points to Section 3.4 of the Stock Issuance Agreement, where Dr. Mason agreed that he had not relied on information that was not in line with the terms of the Agreement. (*Id.* at 9.) RVOL argues that Dr. Mason's fraud claim is prescribed, as he admits to having knowledge of the billing practices complained of nearly four years ago. (*Id.*)

Finally, RVOL asserts that it did not owe any fiduciary duty to Dr. Mason. (*Id.* at 10.) It says that there is no authority "whereby a juridical entity such as RVOL owes a fiduciary duty to its employees, its shareholders, or parties that it contracts." (*Id.* (citing *Terrebonne Concrete, LLC v. CEC Enters., LLC*, 11-72 (La. App. 1 Cir. 8/17/11), 76 So.3d 502, 510).) Instead, RVOL argues that the case law indicates that corporate officers do not owe a fiduciary duty to people or entities that contract with the corporation. (*Id.* (citing *Terrebonne Concrete*, 76 So. 3d 502, 510).)

### 2.  *Law and Analysis*

#### a.  Contractual Fraud or Tortious Fraud

Fraud claims in Louisiana may arise under contract or tort. *Clark*, 348 F. App'x at 21. The Louisiana Supreme Court has recognized that

> when a party has been damaged by the conduct of another arising out of a [contractual] relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions. In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action.

*Fed. Ins. Co. v. Ins. Co. of N. Am.*, 262 La. 509, 512 (La. 1972). Dr. Mason has alleged fraud due to RVOL not disclosing its debt to drug manufacturers, thus representing "that it was relatively debt free . . ." (Doc 16 at 25.) RVOL argues that this claim sounds in tort, while Dr. Mason maintains that the claim is for fraud in the making of the contract. Dr. Mason was able to choose

whether to bring this claim as a contract or tort issue, but the Court must now look to the character of the pleading and the form of the action. *See Fed. Ins. Co.*, 262 La. at 512.

The Fifth Circuit in *Clark* examined Louisiana law and how its courts determine the difference between contractual fraud and tortious fraud. 348 F. App'x at 22. The court quoted a Louisiana case, saying,

> [t]he classical distinction between "damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to all persons. Even when tortfeasor and victim are bound by a contract, courts usually apply the delictual prescription to actions that are really grounded in tort.

*Id.* (quoting *Trinity Universal*, 756 So. 2d at 638). While the Fifth Circuit in *Clark* went on to say that the fact that the plaintiff did not seek recission of the contract indicated that the action was grounded in tort, the Louisiana Supreme Court said four years later that a party does not need to seek recission of a contract to recover damages in contract. *Stutts v. Melton*, 13-557 (La. 10/15/13), 130 So. 3d 808, 814–15 ("[s]urely, the legislature did not intend the victim of fraud to go uncompensated for attorney fees, or for that matter, any damages at all, unless he seeks recission of the entire contract."). Thus, just because Dr. Mason and RVOL had a contractual relationship does not automatically make this claim contractual.

The root of Dr. Mason's allegations in the *Counterclaim*, however, is that RVOL misrepresented its financial situation and did not disclose key facts about RVOL during the negotiations process. Dr. Mason's allegations fall within the definition of contractual fraud given in Louisiana Civil Code Article 1953: "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." This article is found

in the Chapter of the Civil Code that deals with vices of consent in conventional obligations, or contracts, and thus pertains to contractual fraud. This indicates that Dr. Mason's claim is contractual.

Even though the damages sought by Dr. Mason—"all wages, damages, expenses and other amounts"—are more similar to tort damages than contract damages, this does not necessarily mean that Dr. Mason's claim is a tort claim. Dr. Mason cites *Pan American Life Ins. Co. v. Louisiana Acquisitions Corp.*, No. 13-5027, 2020 WL 68612, *3–4 (E.D. La. Jan. 7, 2020), saying that his claim should not be limited to the recission of the contract. (Doc. 26 at 18–19.) *Pan American* and the cases that it cites deal mostly with the issue of whether a party may recover attorney's fees if he has not sought recission of the contract. *Pan Am.*, 2020 WL 68612 at *3–4 (citing *Stutts* 130 So. 3d at 814–15). As mentioned above, the Louisiana Supreme Court in *Stutts* held that a party did not need to seek recission of the contract to recover damages relating to the contract. *Stutts*, 130 So.3d at 814. This supports the Court's conclusion that Dr. Mason can seek damages through his contractual fraud claim, even though he did not seek the recission of the contract.

The Court finds that Dr. Mason's fraud claim is based in contract, as Dr. Mason relied on the alleged misrepresentation that RVOL was relatively debt free during negotiations between Dr. Mason and RVOL and entered into a contract based on that misrepresentation. The types of damages sought, while similar to tort damages, do not preclude Dr. Mason's claim from being contractual, as damages may be sought for breach of contract without recission of the contract.

b.  Prescription

As the Court has found that Dr. Mason's fraud claims are contractual, the prescriptive period for contracts applies. The prescriptive period for contract actions is ten years. La. Civ. Code

Art. 3499. Dr. Mason's *Counterclaim* was filed May 8, 2023, well within ten years from the signing of the contract.

Dr. Mason pleads in the *Counterclaim* that he did not become aware of RVOL's financial troubles until after he became a shareholder, in October 2019. (Doc. 16 at 11.) The *Counterclaim* was filed on May 8, 2023. (Doc. 16.) Even if Dr. Mason discovered the misrepresentation as soon as he became a shareholder, the *Counterclaim* was filed well within the applicable ten-year prescriptive period. Thus, RVOL's *Motion to Dismiss* is denied in this respect.

c.   Sufficiency of Pleading under Rule 9(b)

Federal Rule of Civil Procedure 9(b) sets forth heightened pleading standards for fraud claims. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations that there was fraud by omission are subject to a relaxed standard. *Trinity Med. Servs.*, 2018 WL 3748399, at *5. Under the relaxed standard, the pleading only needs to set forth "the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." *Id.*

Dr. Mason seems to characterize his fraud claim as both fraud and fraud by omission. In one paragraph, he says that "RVOL did not disclose its debt to the drug manufacturers and vendors, for which it had already been paid." (Doc. 16 at 25.) In the next paragraph, he says "RVOL's representation that it was relatively debt free . . ." (*Id.*) While these allegations seem to point to both fraud and fraud by omission, the pleading does not meet even the relaxed standard of fraud by omission. Dr. Mason's pleading does not set forth the place where the omissions should have appeared or the way in which the omitted facts made the representations misleading.

There were multiple contracts between the parties, none of which are cited to show where the misrepresentation or omission occurred. There is no indication in the *Counterclaim* whether the misrepresentation or omission occurred during the negotiations. Dr. Mason also alleges that the misrepresentation or omission was misleading, without describing how it was misleading. While the Court must view the *Counterclaim* in the light most favorable to Dr. Mason, allegations which amount to legal conclusions made in the *Counterclaim* do not satisfy the pleading standard. *See In re Great Lakes Dredge*, 624 F.3d at 210. Dr. Mason has not met the heightened or relaxed pleading standard under Rule 9(b) and thus his fraud claim will be dismissed without prejudice.

### D. Louisiana Unfair Trade Practices Act

#### 1. Parties' Arguments

##### a.  RVOL's *Motion to Dismiss* (Doc. 19-5)

RVOL first argues that Dr. Mason lacks standing to assert a Louisiana Unfair Trade Practices Act ("LUTPA") claim against RVOL. (Doc. 19-5 at 12.) RVOL contends that the purpose of LUTPA is "to protect consumers and business competitors from economic losses incurred as a result of unfair or deceptive activity." (*Id.* (quoting *City of Alexandria v. Cleco Corp.*, No. 1:05-01121, 2010 WL 290506, *11 (W.D. La. Jan. 22, 2010) (Drell, J.).) The right of action, RVOL claims, is limited to two groups of plaintiffs: direct consumers and business competitors. (*Id.* (quoting *Tubos de Acero de Mex., S.A. v. Am. Int'l. Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002)).) RVOL argues that Dr. Mason is not a direct consumer, as "[t]he purchase of partnership units does not qualify as a consumer transaction under the meaning of the statute, because LUTPA does not apply to security transactions." (*Id.* at 13 (quoting *Tessier v. Moffatt*, 93 F. Supp. 2d 729, 734 (E.D. La. 1998) (internal citations omitted) (alteration in original)).) Likewise, RVOL argues that Dr. Mason is not a business competitor with RVOL because he would

need to "actually or potentially engage in business that competes directly or indirectly with RVOL." (*Id.*)

RVOL asserts that the Fifth Circuit's decision in *Orthopedic Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220 (5th Cir. 1991) is controlling, as it held that a business that is not a competitor does not have standing to bring a LUTPA claim. (*Id.*) RVOL addresses the Louisiana Supreme Court case *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, saying that its holding that LUTPA claims are not restricted to the two groups is a plurality decision and is thus not binding on this Court. (*Id.* (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 2010)).) RVOL cites cases that have addressed a LUTPA claim but did not follow *Cheramie*'s expansive view of LUTPA standing. (*Id.* at 14 (citing *Mayehaul Trucking, LLC v. Sasol Chem.l, LLC*, 21-797 (La. App. 3 Cir. 11/9/22), 353 So. 3d 243, 252; *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. 15-3913, 2021 WL 2853069, *10–11 (E.D. La. July 8, 2021) (Fallon, J.).)

RVOL argues that the relationship between it and Dr. Mason was not a consumer relationship that would be covered by LUTPA; rather, it is a contractual dispute with a former shareholder. (*Id.* at 15.) RVOL asserts that the decision in *Cheramie* should not be applied, but even if it is considered, the type of practice is not that which is covered by LUTPA. (*Id.*) RVOL says that Dr. Mason's assertion that RVOL's conduct was "immoral, deceitful and substantially injurious . . ." is a legal conclusion. (*Id.*) RVOL argues that the facts pled by Dr. Mason do not state a claim under LUTPA. (*Id.*)

Next, RVOL claims that Dr. Mason's LUTPA claim is prescribed or perempted. (*Id.*) RVOL does not address whether a prescription or a peremptive period applies to LUTPA claims, as they are both one year. (*Id.*) RVOL argues that the claim is prescribed at a minimum. (*Id.* at 15–

16.) RVOL addresses four of Dr. Mason's LUTPA claims, detailing how each is prescribed. (*Id.* at 16–17.) First, RVOL says that the LUTPA claim relating to the failure to disclose prior debt is prescribed for the same reasons outlined above as to Dr. Mason's fraud claim. (*Id.* at 16.) Second, it argues that the salary deferral claim is prescribed because the deferral occurred in 2020, which is beyond the one-year prescription period. (*Id.*) Third, RVOL asserts that the claim for refusing to pay cash rebates is prescribed because Dr. Mason stopped receiving rebates when he became a Class B shareholder, which happened in November 2021, starting the prescription period on his claim. (*Id.* at 16–17.) Fourth, the failure to reimburse routine expenses is prescribed because the claim stems from a refund of points that occurred in 2020. (*Id.* at 17.)

Next, RVOL argues that Dr. Mason's LUTPA claim is a repackaged breach of contract claim. (*Id.*) RVOL asserts that Dr. Mason's claims lack the egregious behavior that LUTPA is designed to cover, which makes them more like breach of contract claims, and thus should be dismissed. (*Id.* at 18.)

Finally, RVOL claims that Dr. Mason has not stated a claim for treble damages. (*Id.*) RVOL says that Dr. Mason has not pled that RVOL's conduct continued after notice from the attorney general about a LUTPA violation, and thus is not entitled to treble damages. (*Id.* at 18–19.)

b.  Dr. Mason's *Opposition* (Doc. 26)

Dr. Mason asserts that he does have standing to bring a LUTPA claim, as this Court should follow the expansive definition of plaintiffs set forward in *Cheramie*. (Doc. 26 at 21.) Dr. Mason says that *Cheramie's* decision to let any person—who has suffered a loss due to unfair business practices—bring a LUTPA suit has been followed by the vast majority of courts and cites several cases in support this position. (*Id.* at 21–22.) *Cheramie*, Dr. Mason argues, should be used in

making the *Erie* "guess," determining what Louisiana courts would hold in this situation. (*Id.* at 22–23.)

Next, Dr. Mason maintains that five of his LUTPA claims are not prescribed because they did not arise or become payable until he left RVOL in August 2022. (*Id.* at 23–24.) Next, Dr. Mason argues that his LUTPA claim is not a repackaged breach of contract claim because the actions that he alleges RVOL took were "all unethical and retaliatory because of Dr. Mason's decision to leave the practice." (*Id.* at 24–25.) He asserts that he may bring both breach of contract and LUTPA claims if there are "unethical undertones" to the breach of contract claim. (*Id.* at 24 (quoting *D. H. Griffin Wrecking Co. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713 (E.D. La. 2020)) (internal quotations omitted).)

Finally, in a footnote, Dr. Mason says that he is not asserting a claim for treble damages, so the *Motion to Dismiss* the treble damages should be denied as moot. (*Id.* at 25, n.50.)

### c.  RVOL's *Reply* (Doc. 28)

RVOL points the Court to a Louisiana Supreme Court case decided after *Cheramie*, wherein the court articulated the goals of LUTPA: "to protect consumers and to foster competition." (Doc. 28 at 1 (quoting *Quality Env't Processes, Inc. v. I.P. Petrol. Co.,* 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025 (internal citations omitted)).) RVOL argues that this case, a dispute between an employee/shareholder and a company requesting reimbursement and payment of expenses, does not fall under these goals. (*Id.* at 1–2.) It insists that the acts that Dr. Mason has alleged do not rise to the egregious behavior level that is required for LUTPA claims. (*Id.* at 2.)

RVOL cites to a case where the Eastern District of Louisiana examined Louisiana law and declined to extend LUTPA to retaliation claims. (*Id.* (citing *Oliver v. Roehm Am., LLC*, No. 21-1831, 2022 WL 11763644 (E.D. La. Oct. 20, 2022) (Brown, C.J.)).) This, RVOL argues, supports

its contention that LUTPA does not apply to Dr. Mason's claims. (*Id.*) RVOL also cites to a Louisiana Third Circuit opinion, dealing with co-owners of a corporation, where the court said, "Defendant['s] refusal to make distributions of profit annually as agreed in no way affects consumers, nor would the distribution if made foster competition in the marketplace." (*Id.* at 3 (quoting *Guillory v. Broussard*, 15-888 (La. App. 3 Cir. 5/18/16), 194 So.3d 764, 779) (internal quotations omitted)).) RVOL says that similar reasoning should apply here. (*Id.*)

As to prescription, RVOL argues that the five claims that Dr. Mason contends are not prescribed have in fact prescribed. RVOL says that Dr. Mason has argued that some of his claims arise from RVOL refusing to pay Mason in retaliation for his announcing that he would leave RVOL. (*Id.* at 4–5.) These claims would have accrued in February 2022, thus prescribing in February 2023. (*Id.*) Additionally, RVOL argues that the refusal to reimburse would have accrued in 2020 and 2021, when the alleged refusal to pay occurred, not later in retaliation. (*Id.* at 5.)

### 2. *Law and Analysis*

Louisiana Revised Statutes § 51:1401 *et. seq.* is known as Louisiana's Unfair Trade Practices and Consumer Protection Law, commonly known as LUTPA. LUTPA allows a person who has lost money or movable property due to unfair or deceptive practices to bring a private action to recover damages. La. R.S. § 51:1409. Louisiana Revised Statute § 51:1405 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby considered unlawful." This language is very broad, which has led to "'Louisiana courts determin[ing] what is a LUTPA violation on a case-by-case basis.'" *Quality Env't Processes*, 144 So. 3d at 1025 (quoting Keith E. Andrews, Comment *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of*

*Case Law*, 41 Loy. L. Rev. 759, 762 (1996)). Louisiana courts have defined standing and the bounds of what constitutes a LUTPA violation, which the Court will address below.

a. <u>Standing</u>

Whether Dr. Mason has standing to assert a LUTPA claim turns on the interpretation of *Cheramie* and the other cases that have examined this issue. While the portion of *Cheramie* that addressed standing was only joined by three justices, thus not creating binding precedent, the case does, as was stated by this Court in *Swoboda v. Manders*, provide instruction when determining how to apply state law in light of the *Erie* Doctrine. No. 14-19-EWD, 2016 WL 1611477, *5 (M.D. La. Apr. 21, 2016) (Wilder-Doomes, M.J.). Thus, the Court will examine *Cheramie* and other Louisiana cases that interpret LUTPA to determine whether to apply the expansive standing that *Cheramie* allows.

In *Cheramie*, the Louisiana Supreme Court case expanded the definition of plaintiffs that can bring a LUTPA claim. 35 So. 3d 1053. Prior to *Cheramie*, the only plaintiffs that could bring LUTPA claims were direct consumers and business competitors. The court in *Cheramie* looked to the language of the LUTPA statute and found that there was no language that limited the right to bring suit to direct consumers or business competitors. *Id.* at 1057–58. This holding did not gain a majority of justices, with Justice Johnson writing a concurring opinion, disagreeing with the plurality's choice to allow any person to bring a LUTPA claim. *Id.* at 1063 (Johnson, J., concurring). Justice Johnson looked to the terms "competition" and "trade or commerce" in Louisiana Revised Statutes § 51:1405, saying that they indicate that the legislature intended to protect business competitors and consumers. *Id.* at 1064.

The Fifth Circuit followed *Cheramie*'s expanded standing view in *IberiaBank v. Broussard*, 907 F.3d 826, 840 (5th Cir. 2018). This Court in *Swoboda* used *Cheramie* as a factor

in an *Erie* "guess" as to how the Louisiana Supreme Court would apply the law. *Swoboda*, 2016 WL 1611477 at *5. Many Louisiana appellate courts and federal district courts located in Louisiana have also followed *Cheramie. See e.g. Caldwell Wholesale Co. v. R.J. Reynolds Tobacco Co.*, No. 17-200, 2018 WL 2209165 (W.D. La. May 11, 2018) (Hicks, C.J.); *Rockwell Automation, Inc. v. Montgomery*, No. 17-415, 2017 WL 2294687 (W.D. La. May 24, 2017) (Foot, J.); *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390 (E.D. La. 2016); *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602 (E.D. La. 2015); *Jones v. Am. Ins. Co.*, 16-0904 (La. App. 1 Cir. 8/16/17), 226 So. 3d 537.

Based on the Fifth Circuit's opinion in *IberiaBank* and supported by the other decisions cited above, this Court will apply *Cheramie* as the controlling Louisiana law. Therefore, any person, not just direct consumers or business competitors, may assert a LUTPA claim. Thus, RVOL's *Motion to Dismiss* as it pertains to standing is denied.

### b.  Failure to State a Claim

Now, the Court must determine if Dr. Mason sufficiently pled a LUTPA violation, or if his claim is simply a repackaged breach of contract claim. Generally, a LUTPA claim may not be pled alongside a breach of contract claim based on the same actions. *Del. Valley Fish Co. v. 3South LLC*, 601 F. Supp. 3d 7, 21 (M.D. La. 2022). There is a narrow exception, however, when there are "'deceptive and unethical undertones' to the parties' contractual relationship. . ." *Id.* (quoting *D. H. Griffin Wrecking Co.*, 463 F. Supp. 3d at 724). In these situations, plaintiffs have been allowed to bring both a LUTPA and breach of contract claim. *Id.*

In Dr. Mason's *Counterclaim*, he makes reference to some of his breach of contract claims, saying that they were "immoral, deceitful and substantially injurious." (Doc. 16 at 26.) The breach of contract claims that he attaches to his LUTPA claim are (1) pre-existing debt, (2) salary deferral

not paid back, (3) failure to pay cash rebates, (6) loss of income due to reduction in referrals after notice, (8) unpaid accounts receivable, (9) reimbursement of unpaid expenses, and (12) failure to make equal distributions. (*Id.*)

While LUTPA claims and breach of contract claims may be based on the same actions, "there is 'a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.'" *D. H. Griffin Wrecking Co.*, 463 F. Supp. 3d at 723 (quoting *Cheramie*, 35 So. 3d at 1060). In this case, Dr. Mason does not allege how the actions that give rise to his LUTPA claims are immoral, deceitful, or substantially injurious. Even when reading each allegation within the breach of contract section of the *Counterclaim*, the claims simply allege that the agreements were breached, not that any of the actions were immoral, deceitful, or substantially injurious. There is no identifiable difference between the claims that Dr. Mason says are covered by LUTPA and those that are not. The Court finds that Dr. Mason has failed to distinguish his LUTPA claim from his breach of contract claims, and therefore the Court will dismiss his LUTPA claims without prejudice.

### c.  Prescription

Although Dr. Mason's LUTPA claims are being dismissed on other grounds, the Court will address the prescription issue, as it may be relevant for purposes of an amendment. Section 1409(E) of LUTPA gives the prescriptive period for LUTPA claims. "The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." La. R.S. § 51:1409(E). The *Counterclaim* was filed on May 8, 2023.

In its *Opposition*, RVOL argues that only four of the LUTPA claims were prescribed: (1) pre-existing debt, (2) salary deferral not paid back, (3) failure to pay cash rebates, and (11) failure

to pay expenses from personal credit card. (Doc. 19-5 at 16–17.) Dr. Mason did not respond to the argument that claim 1 (pre-existing debt) was prescribed, so he has waived that argument. *JMCB*, 336 F. Supp. 3d at 634 ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citation omitted)). Thus, claim 1 (pre-existing debt) is prescribed.

Claims 2 (salary deferral not paid back), 3 (failure to pay cash rebates), and 11 (failure to pay expenses from personal credit card) all appear prescribed on their face. Claim 2 refers to a salary deferral between the months of April 2020 and July 2020, where Dr. Mason would be reimbursed once the "financial crisis was past." (Doc. 16 at 13–14.) There is no mention of when the financial crisis was past, so there is no specific date for when the money was due to Dr. Mason. "Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as here, the burden shifts to the plaintiff to prove that the prescription has been suspended or interrupted." *Messenger v. Boston Sci. Corp.*, No. 18-827, 2020 WL 60242 at \*13 (M.D. La. Jan. 6, 2020) (deGravelles, J.) (quotations omitted). The allegations in Dr. Mason's *Counterclaim* fail to address and certainly fail to meet the plaintiff's burden to show that this claim was suspended or interrupted. Thus, claim 2 (salary deferral not paid back) is prescribed.

Claim 3 relates to rebates Dr. Mason was allegedly entitled to, the last of which was received on February 21, 2021. (Doc. 16 at 15.) There were two quarters prior to the final rebate payout where Dr. Mason did not receive rebates. (*Id.*) These are the only dates that Dr. Mason includes in this portion of the *Counterclaim*. Since LUTPA specifies that prescription begins running when the transaction giving rise to the action occurs, prescription began running when the rebates were withheld. Again, this claim is prescribed on its face and Dr. Mason has not pled

enough facts to meet his burden of showing that the claim is not prescribed. Thus, claim 3 (failure to pay cash rebates) is prescribed.

Finally, claim 11 is based on RVOL's use of Dr. Mason's personal American Express points to pay business expenses. The points were refunded in 2020. Dr. Mason does not include the date when those points were used to pay RVOL's expenses. As the points were classified as a "statement credit," it is reasonable to think that the points were used shortly thereafter. (*Id.* at 23.) The transaction that gave rise to this LUTPA action likely happened in 2020, and the *Counterclaim* does not provide any dates to show otherwise. Thus, claim 11 (failure to pay expenses from personal credit card) is prescribed.

## IV.    LEAVE TO AMEND

"Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). "A court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1995). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, the court said:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

313 F.3d 305, 329 (5th Cir. 2002). Further:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because

33

the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

*JMCB*, 336 F. Supp. 3d at 642 (quoting 5b Charles A. Wright, Arthur R. Miller, *et al., Federal Practice and Procedure* § 1357 (3d ed. 2016)).

Thus, the Court will, in accordance with wise judicial practice, allow Dr. Mason to amend his *Counterclaim* to correct his claims that have been dismissed without prejudice. *See Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.) (citing, *inter alia, Fetty v. La. State Bd. Of Private Sec. Exam'rs*, 611 F. Supp. 3d 230, 249–50 (M.D. La. 2020) (deGravelles, J.)).

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Certain Counterclaims Pursuant to Federal Rule 12* ("*Motion to Dismiss*") (Doc. 19) filed by Counter-Defendant Retina & Vitreous of Louisiana, Inc., is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that with respect to RVOL's *Motion to Dismiss* Dr. Mason's breach of contract claim (11) for prescription and breach of contract claim (13), fraud,

and LUTPA claim for failure to state a claim, the *Motion to Dismiss* is **GRANTED.** Dr. Mason's breach of contract claim (13), fraud, and LUTPA claims are **DISMISSED WITHOUT PREJUDICE**, and breach of contract claim (11) is **DISMISSED WITH PREJUDICE**.

 **IT IS FURTHER ORDERED** that Dr. Mason shall have twenty-eight (28) days in which to cure the above-described deficiencies of those claims dismissed without prejudice.  Failure to do so will result in the dismissal of these claims with prejudice.

 **IT IS FURTHER ORDERED** that, in all other respects, RVOL's *Motion to Dismiss* is **DENIED**.

 Signed in Baton Rouge, Louisiana, on <u>March 1, 2024</u>.

          _____

          **JUDGE JOHN W. deGRAVELLES**
          **UNITED STATES DISTRICT COURT**
          **MIDDLE DISTRICT OF LOUISIANA**